NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY J. IACOUZZI, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civ. No. 17-8897 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court upon the Report and Recommendation ("R & R") submitted by U.S. Magistrate Judge Norah McCann King affirming the final decision of Defendant Commissioner of Social Security ("Commissioner"), which denied the application of Plaintiff Anthony Iacouzzi ("Plaintiff") for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (ECF No. 20.) Plaintiff has filed an Objection to the Report and Recommendation, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure. (ECF No. 24.) For the reasons stated herein, Plaintiff's Objection is overruled, and the R & R is approved and adopted.

### BACKGROUND

On February 6, 2013, Plaintiff filed an application for disability insurance benefits, alleging that he had been disabled since March 10, 2010 due to a cervical spine injury, left shoulder injury, and bilateral arm/elbow impairment. (Administrative Record ("R.") 150–54, 166, ECF No. 5.) Plaintiff's application was denied, as was his request for reconsideration. (R.

72–95.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on February 23, 2016. (R. 116.) On April 13, 2016, the ALJ issued a finding that Plaintiff was not disabled within the meaning of the Social Security Act at any time from March 10, 2010, the alleged onset date of disability, through December 31, 2015, the date last insured. (R. 23–31.) On December 6, 2017, the Appeals Council denied Plaintiff's request for review. (R. 1–6.)

Plaintiff appealed the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) On April 27, 2020, the Magistrate Judge issued the R & R affirming the Commissioner's decision. (ECF No. 20.) On May 27, 2020, Plaintiff timely filed an Objection to the R & R. (ECF No. 24.) Defendant did not respond to Plaintiff's Ojection. The R & R is presently before the Court.

## **LEGAL STANDARDS**

### I.     Standard of Review for Report and Recommendation

When a party makes specific objections to a Magistrate Judge's report and recommendation, the district court must perform a *de novo* review of the issues raised by the objections. Fed. R. Civ. P. 72(b)(3); L. Civ. R. 72(c)(2). In its *de novo* review, a district court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). A party's objections are entitled to *de novo* review even if they "rehash arguments presented to and considered by" the Magistrate Judge. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).

### II.    Standard of Review for ALJ Decision

Section 405(g) empowers district courts to "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, the court reviews questions of law *de novo* and questions of fact under a "substantial evidence" standard of review. *Id.*; *Poulos v. Comm'r of*

*Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007). "Substantial evidence is defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Where the Commissioner's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently. § 405(g); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). However, the Commissioner must "analyze[] all evidence and . . . sufficiently explain[] the weight he has given to obviously probative exhibits." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (internal quotations omitted); *accord Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 122 (3d Cir. 2000).

## **DISCUSSION**

The Magistrate Judge reviewed the ALJ's analysis of the five-step evaluation for determining disability. (R & R at 7–8, ECF No. 20.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of March 10, 2010 through his date last insured of December 31, 2015. (R. 23.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: spine disorders, degenerative joint disease, carpal tunnel syndrome, and epicondylitis. (*Id.*) The ALJ determined that Plaintiff's alleged impairments of depression and anxiety were not severe. (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24.) At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with various limitations, including the limitation that Plaintiff cannot rotate his neck more than 45 degrees. (R. 24–29.) At step five, the ALJ concluded that a significant number of jobs existed in the national economy

that could be performed by an individual with Plaintiff's vocational profile, including the occupations of callout monitor and surveillance system monitor. (R. 30.)

Plaintiff raises three main objections to the Magistrate Judge's affirmance of the ALJ's decision: (1) the ALJ's RFC determination was not based upon substantial evidence; (2) the ALJ failed to find that Plaintiff's anxiety and depression were severe impairments; and (3) the ALJ improperly assessed Plaintiff's credibility. (Opp'n at 1–5, ECF No. 24.) The Court will review each of these issues *de novo*.

## I.     RFC Determination

### A.     *2011 and 2012 Work Scripts*

Plaintiff first argues that the ALJ improperly relied upon work scripts from 2011 and 2012. (Opp'n at 2.) These scripts were issued by examining physicians and cleared Plaintiff to return to work with several restrictions. (R. 352, 355, 358, 381.) In determining Plaintiff's RFC, the ALJ refers to the work scripts as follows:

> On May 3, 2011, October 21, 2011, January 6, 2012 and February 3, 2012, the claimant was cleared to return to work with the following restrictions: no lifting, carrying, pushing or pulling more than 10 pounds, no use of the right arm above shoulder, no repetitive prolonged bending or stooping and no repetitive prolonged kneeling, squatting or climbing. These opinions were rendered by examining physicians. They are given great weight and are incorporated into the residual functional capacity herein.

(R. 28.) Plaintiff maintains that the ALJ cannot rely on the work scripts because they pre-dated his cervical surgeries. (Opp'n at 2.) Plaintiff argues that by considering the work scripts, the ALJ ignored the "material and substantial medical developments in Plaintiff's treatment course . . . that occurred after the scripts were written and prior to his date of last insured." (*Id.*)

As the Magistrate Judge correctly noted, because Plaintiff's alleged period of disability began on March 10, 2010, the work scripts from 2011 and 2012 are relevant to his disability

during that time period. (R & R at 10.) Additionally, the ALJ thoroughly examined Plaintiff's medical records that post-date the work scripts, including his cervical surgeries and subsequent pain management. (*See* R. 26–29.) Therefore, the ALJ did not act improperly in considering the 2011 and 2012 work scripts.

      B.    *Neck Rotation*

Plaintiff further asserts that there is no basis in the record to support the ALJ's finding that Plaintiff was able to rotate his neck up to 45 degrees. (Opp'n at 2–3.) Plaintiff notes that the Vocational Expert ("VE") determined that the additional limitation of Plaintiff's neck rotation of 45 degrees would reduce the number of jobs available to him by twenty-five percent. (*Id.*; *See* R. 30.) Therefore, Plaintiff argues, a greater limitation on his neck rotation would likely further decrease the number of available jobs. (Opp'n at 2–3.)

A review of the record suggests that Plaintiff's ability to rotate his neck may have been more limited than what the RFC suggests. First, on April 30, 2013, Dr. Irwin Moskowitz found that Plaintiff could rotate his neck "10% of normal to the right and 15% of normal to the left." (R. 710.) Following additional surgeries, on October 22, 2013, Dr. Rashel Potashnik found that Plaintiff could only rotate his neck 10 degrees. (R. 572.) Finally, on July 7, 2014, Dr. David Weiss found that Plaintiff could rotate his neck 30 degrees to the left and 20 degrees to the right. (R. 716.)

The ALJ does not explicitly state how he determined that Plaintiff could rotate his neck up to 45 degrees. The ALJ refers to the specific percentages of rotation determined by Dr. Moskowitz. (R. 26.) The ALJ also cites the reports of Dr. Potashnik and Dr. Weiss and notes Plaintiff's "limited" or "decreased" range of motion, but does not state the degrees of rotation specified by each physician. (R. 26–27.) The ALJ does not indicate that Plaintiff's neck rotation

5

improved at any time after Dr. Weiss's examination. Ultimately, the Court finds that the evidence in the record supports a more restrictive RFC with regard to Plaintiff's ability to rotate his neck.

However, the Court finds that this error was harmless based on the VE's testimony. The VE testified that the occupations of callout operator and surveillance system monitor would be available for an individual with Plaintiff's RFC, and stated the following regarding the limitation that Plaintiff could only rotate his neck up to 45 degrees:

> [T]he positions of call-out operator and surveillance system monitor are[] essentially sedentary positions that will not have a requirement that somebody has to rotate their neck, so I don't believe that [the limited neck rotation] would affect the individual's ability to perform those jobs overall, although there may be some employment situations that[] should be eliminated, just based on the ergonomic setup of them. So I'd probably erode the number [of available jobs] by about 25 percent.

(R. 68.) The ALJ then asked the VE if his answer would change if the hypothetical individual had an even greater limitation on his neck rotation. (R. 69.) The VE responded that "it really wouldn't be any[ ] different" because "the positions won't require a rotation of the neck, like driving or something to that effect would, so I believe they could be performed overall." (*Id.*)

Based on the VE's testimony, further limiting Plaintiff's neck rotation would not affect the availability of the indicated vocations. Plaintiff has not presented any evidence to the contrary. Accordingly, the Court finds that any error regarding the extent of Plaintiff's neck rotation was harmless. *Cf. Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 815–16 (3d Cir. 2016) (finding harmless error where the ALJ failed to include the claimant's social functioning limitation in the hypothetical to the VE because the claimant "expound[ed] no theory of how [this limitation] would have changed the vocational expert's answers," and because the suggested occupations already appeared to require little social interaction); *Seaman v. Soc. Sec.*

6

*Admin.*, 321 F. App'x 134, 136 (3d Cir. 2009) (finding harmless error where the ALJ failed to consider the combined effect of the claimant's impairments because the claimant would still be capable of performing her past work as a medical transcriptionist).

## II.     Psychological Impairments

Plaintiff maintains that the ALJ's determination at step two that Plaintiff's anxiety and depression were not severe impairments was not based on substantial evidence. (Opp'n at 3–4.) Plaintiff points to the medical opinion of Dr. Lawrence Eisenstein from a May 24, 2014 examination, which found that Plaintiff suffered from anxiety and depression and that "antidepressant medication with or without talk therapy was indicated." (*Id.*; *See* R. 615–18.) Dr. Eisenstein opined that Plaintiff had a "psychiatric disability" of 42.5 percent. (*Id.*)

To prove that an impairment is severe at step two, "an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)). The Third Circuit has described step two as "a *de minimis* screening device to dispose of groundless claims." *Id.* (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)). Still, "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." *Id.* (citation omitted).

At step two, the ALJ found that, despite Dr. Eisenstein's opinion, Plaintiff's alleged anxiety and depression were not severe impairments. (R. 23.) The ALJ reasoned,

> [Plaintiff] receives no treatment for these conditions and these impairments do not significantly limit his abilities to do basic work activities when considered alone or in combination with his other alleged impairments. Furthermore, [Plaintiff] did not allege any impairment in the activities of daily living, social functioning,

7

>concentration, persistence and pace or episodes of decompensation due to mental impairments but rather such limitations were due to his physical limitations. Therefore, anxiety and depression are not considered severe impairments.

(*Id.*) When determining Plaintiff's RFC at step four, the ALJ further explained that Dr. Eisenstein's opinion "was rendered for workers' compensation purposes only and is not binding on Commissioner of Social Security." (R. 27, 29.) The ALJ also noted that "the record does not support significant psychiatric impairments" and accordingly decided to "give [Dr. Eisenstein's] opinion little weight." (R. 29.)

The Court finds that the ALJ's determination is supported by substantial evidence in the record. Plaintiff did not initially allege anxiety or depression when he applied for disability insurance benefits. (R. 166.) Additionally, as the ALJ notes, Plaintiff did not present any records indicating that he had sought or received treatment for these conditions. (R. 23.) The only indication of Plaintiff's psychiatric impairments is from Dr. Eisenstein's examination. The ALJ's decision to give little weight to Dr. Eisenstein's opinion comports with *Moraes v. Commissioner of Social Security*, 645 F. App'x 182 (3d Cir. 2016), in which the Third Circuit affirmed the ALJ's decision to give no weight to the opinions in a doctor's report prepared for workers' compensation, *id.* at 186–87. *See also Coria v. Heckler*, 750 F.3d 245, 247–48 (3d Cir. 1984) (holding that an ALJ "could reasonably disregard so much of the physicians' reports as set forth their conclusions as to [the claimant's] disability for worker's compensation purposes"). Accordingly, the ALJ's determination that Plaintiff's alleged depression and anxiety were not severe is supported by substantial evidence in the record.

**III.    Credibility of Plaintiff's Statements**

Finally, Plaintiff contends that the ALJ erred in finding that Plaintiff's subjective complaints were not entirely credible. (Opp'n at 4–5.) Plaintiff argues that "the ALJ discredited

Plaintiff's subjective complaints of pain based upon his ability to do some limited shopping, take care of his personal needs and ride in a car." (*Id.* at 4.)

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, the ALJ must consider whether there is a "medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms, such as pain." 20 C.F.R. § 404.1529(c)(1). If so, the ALJ "must then evaluate the intensity and persistence of [the] symptoms" to determine how these symptoms limit the claimant's capacity for work. *Id.* The ALJ "has wide discretion to weigh the claimant's subjective complaints . . . and may discount them when they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); 20 C.F.R. § 416.929(c)).

The ALJ reviewed Plaintiff's testimony and Function Report in detail. (R. 25.) The ALJ noted that Plaintiff had several medically determinable impairments that could reasonably be expected to cause Plaintiff's alleged symptoms. (R. 25.) However, the ALJ determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were "not fully consistent with the record." (*Id.*) The ALJ explained,

> After careful review of the record, I find that while the claimant does have severe impairments, they do not prevent all work activity. Although the claimant reported significant pain and other limitations, he also reported that he is able to do some limited food shopping, take care of his personal needs, climb stairs and ride in a car. Most recent cervical MRIs show only mild disk bulge. (Exhibits 11F, 13F). No treating physician reported that he is unable to work or disabled other than with regard to his workers' compensation claim.

(R. 28.) Ultimately, based "on the entire record, *including the testimony of the claimant*," the ALJ concluded that Plaintiff could perform sedentary work with additional limitations, reflecting

9

"claimant's widespread pain due to spine disorder and joint diseases and his extremely limited range of motion in the cervical area." (R. 29 (emphasis added).)

The Court finds that the ALJ's determination is supported by substantial evidence in the record. Plaintiff's assertion that the ALJ "discredited" his testimony is erroneous; the ALJ considered Plaintiff's testimony in combination with a thorough review of the objective medical evidence in the record. (*See* R. 25–29.) The ALJ accepted that Plaintiff did experience pain, which was linked to his severe impairments, but that this pain did not "prevent *all* work activity." (R. 28 (emphasis added).) In making this finding, the ALJ properly relied on "specific objective medical and nonmedical evidence as required by 20 C.F.R. § 404.1529(c)," *Huggins v. Comm'r of Soc. Sec.*, 2019 WL 3491940, at *6 (D.N.J. Aug. 1, 2019), including the fact that Plaintiff is reportedly able to perform a limited number of tasks and that Plaintiff's most recent MRI only showed a mild disc bulge (R. 28). Ultimately, the ALJ's analysis, taking into account Plaintiff's pain, resulted in a highly restrictive RFC determination. For these reasons, the Court finds that the ALJ did not err in assessing the severity of Plaintiff's impairments.

## CONCLUSION

For the foregoing reasons, Plaintiff's Objection to the Magistrate Judge's R & R is overruled, and the R & R is adopted. An appropriate Order will follow.


Date: September 18, 2020                           */s/ Anne E. Thompson*
                                                                                         ANNE E. THOMPSON, U.S.D.J.